UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| JEFF GAITHER, DEPUTY LIQUIDATOR OF KENTUCKY HEALTH COOPERATIVE, INC., | ) ) ) | Civil No: 3:16-cv-0094-GFVT |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **&** |
| | ) | **ORDER** |
| BEAM PARTNERS, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

*** *** *** ***

This removed action arises out of the same factual predicate as *Maynard v. CGI Technologies and Solutions, Inc.*, 3:16-cv-00037-GFVT.  Much like the Court's initial jurisdictional ruling in that case, this case presents, as a threshold matter, the Court's power to decide the dispute presented.  Unlike *Maynard v. CGI Technologies and Solutions, Inc.*, which was a consolidated action comprised of a removed case and original petition amongst diverse parties, the above styled removed action has not been consolidated with its companion petition action, *Jeff Gaither v. Beam Partners, LLC, et al.*, 3:16-cv-00094-GFVT.  The instant action was removed from Franklin Circuit Court but, absent granting the motion to sever or dismissing any fraudulently joined defendants, this court must remand the case as there are multiple nondiverse parties that defeat diversity jurisdiction.

This matter is before the Court on the Motion to Sever filed by CGI Technologies and Solutions [R. 5] and the Motion to Remand to State Court [R. 20] by Deputy

Liquidator Jeff Gaither.  For the following reasons, the Motion to Sever [**R. 5**] is **DENIED** and the Motion to Remand [**R. 20**] is **GRANTED**.

**I**

In October of 2016, the Liquidator filed a lawsuit against CGI Technologies and Solutions, Inc., Beam Partners, LLC, Terry S. Shilling, Janie Miller, Joseph E. Smith, and the Officers and Board of Directors of the Kentucky Health Cooperative, Inc.  [R. 1-2 at 4-5.]  CGI asserts that this lawsuit is an "attempt to interfere with this Court's jurisdiction over the Removed Action" as this "duplicative state court action" was filed using "unrelated and facially deficient claims against certain non-diverse defendants."  [R. 30 at 1.]  The Liquidator states that he did not bring this action to infringe upon the Court's jurisdiction, but rather felt the action was necessary to effectuate liquidation of the KYHC following its insolvency.  [*See* R. 20-1 at 2.]

This lawsuit was initiated after an alleged breach of the Administrative Services Agreement (ASA) that was made between the Kentucky Health Cooperative, Inc. (KYHC) and CGI Technologies and Solutions, Inc.  [*See* R. 20-1 at 2.]  KYHC contracted with CGI to have CGI act as a third-party administrator for the Kentucky Health Cooperative.  [*Id.*]  The Liquidator's claims arise from CGI's alleged failure to perform "TPA functions at even a minimum level of competence."  [*Id.* at 3.]  Further, the Liquidator believes that "CGI's failure was so complete that it was a substantial factor in causing KYHC's insolvency."  [*Id.*]

In May 2012, KYHC entered into a "Management and Development Agreement with Beam Partners."  [R. 1-2 at ¶ 18.]  Beam Partners was responsible for many daily managerial tasks such as training Directors on the KYHC Board, overseeing recruitment

and employment efforts for KYHC, implementing the necessary processes to operate KYHC, "execut[ing] administrative services for the operation of KYHC," and providing management for the corporation.  [*Id.* at ¶¶19-20.]  Terry Shilling was Beam Partner's principal and was "instrumental in forming and managing KYHC from 2011 through at least 2013" including a period of service on the KYHC Board of Directors.  [*See* R. 1-2 at ¶ 9.]

From September 2012 to June 2015, Ms. Janie Miller was the Chief Executive Officer of the Kentucky Health Cooperative, Inc.  [R. 1-2 at 7.]  In this role she was also responsible for selecting competitive but financially viable insurance premium rates.  Many of the charges against Ms. Miller are also brought against Joseph E. Smith.  Mr. Smith served as the Chairman of the Board of Directors of the KYHC throughout this same time period.  [*See*  R. 1-2 at ¶¶ 12-14.]  As the KYHC's failure and insolvency became more apparent, KYHC initiated written communication with CGI to discuss contract performance issues and to estimate damages due to CGI's actions.  [R. 20-1 at 3.]  CGI Responded to the August 11, 2015, KYHC letter on September 29, 2015, by denying sole responsibility and arguing that losses were also attributable to "third parties" including improper premium pricing by KYHC.  [*Id.* quoting Exhibit 3.]

The Franklin Circuit Court "placed KYHC in rehabilitation (later liquidation)" on October 2, 2015.  [R. 20-1 at 3.]  The Liquidator's initial lawsuit was filed in May, 2016, but that action was only brought against CGI Technologies and Solutions, Inc., and was removed pursuant to this Court's diversity jurisdiction.  [*Id.*]  Now, this removed "copycat" action has been brought against CGI and a number of nondiverse defendants.

**II**

**A**

The Liquidator challenges the Court's power to decide this case with a motion to remand.  [R. 20.]  A defendant may remove a civil action brought in state court to federal court only if the action is one over which the federal court could have exercised original jurisdiction.  *See* 28 U.S.C. §§ 1441, 1446.  This court has original federal question jurisdiction over civil actions which arise under the "Constitution, laws, or treaties" of the United States, 28 U.S.C. § 1331.  This Court also has original "diversity" jurisdiction over all civil actions when "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and the dispute is between" parties who are "citizens of different states."  *See* 28 U.S.C. § 1332(a).

Because federal courts are courts of limited jurisdiction, any doubts regarding federal jurisdiction should be construed in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted). In determining the appropriateness of remand, a court must consider whether federal jurisdiction existed at the time the removing party filed the notice of removal.  *Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996).  Furthermore, the removing defendant bears the burden of showing that removal was proper.  *Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993), *rev'd on other grounds by Hertz Corp. v. Friend*, 559 U.S. 77 (2010); *Fenger v. Idexx Laboratories*, 194 F. Supp. 2d 601, 602 (E.D. Ky. 2002) (citations omitted).

4

The Liquidator seeks to remand the present action to state court since nondiverse parties are included as Defendants.  The Liquidator also claims that the McCarran-Ferguson Act reverse-preempts the removal and diversity jurisdiction statutes through the Kentucky IRLL [R. 20-1 at 4], but this argument has already been considered and denied. *See Maynard v. CGI Technologies and Solutions, Inc.*, 3:16-cv-0037-GFVT Memorandum Opinion & Order [R. 49.]  CGI argues that the nondiverse Defendants were fraudulently joined, or alternatively that fraudulent joinder and fraudulent misjoinder allow the Court to Dismiss the "CGI-related claims against Miller and Smith," and that Federal Rule of Civil Procedure 21 permits the Court to "sever and remand the claims against the non-diverse Defendants."  [R. 30.]

**B**

To begin, the general rule regarding removal based on diversity of citizenship is that there must be complete diversity "both at the time that the case is commenced and at the time that the notice of removal is filed" in order to properly remove the case to federal court.  *Jerome-Duncan Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999) (emphasis added).

It is clear that federal jurisdiction did not exist at the time the removing party filed the notice of removal.  *See Ahearn v. Charter Twp. of Bloomfield*, 100 F.3d 451, 453 (6th Cir. 1996).  The matter in controversy far exceeds $75,000 but the defendants are not citizens of different States as required by 28 U.S.C. § 1332(a).  Defendant CGI "readily admits that, on its face, the Copycat Action does not satisfy the complete diversity requirement of 28 U.S.C. § 1332…"  [R. 30 at 10.]  The Plaintiff, Jeff Gaither Deputy Liquidator of the KYHC, brings this action on behalf of the KYHC, a Kentucky nonprofit

5

corporation that has its principal place of business in Louisville, Kentucky.  [R. 1-2 at 6.]
The Defendants are citizens of Kentucky, Georgia, Virginia, and Deleware.  Beam
Partners, LLC, is a limited liability corporation formed in Georgia that has a principal
place of business in Atlanta, Georgia.  [R. 1-2 at 6.]  Defendant Terry S. Shilling is a
Georgia resident and citizen.  [*Id.* at 7.]  Defendant Janie Miller, previously the CEO of
KYHC from 2012 to 2015, resides in Kentucky.  The Plaintiff also brings claims against
the Officers and Board of Directors of the Kentucky Health Cooperative, Inc., which was
comprised of a "collection of individuals responsible for the operation of KYHC."  [R. 1-
2 at 7.]  Defendant Joseph E. Smith was the Chairman of the KYHC Board of Directors
and is a resident of the Commonwealth of Kentucky.  [*Id.*]  The removing Defendant,
CGI Technologies and Solutions Inc., is a business incorporated in Delaware with a
principal place of business in Virginia.  [*Id.* at 8.]

There is an exception to this general rule, however, which allows certain cases to
be removed even if complete diversity did not exist at the lawsuit's commencement.
Where a plaintiff voluntarily dismisses a party whose presence would defeat diversity,
the case becomes removable even though diversity did not initially exist.  *See Hopkins
Erecting Co. v. Briarwood Apartments of Lexington*, 517 F. Supp. 243, 249 (E.D. Ky.
1981) ("A case nonremovable on the initial pleadings can become removable only
pursuant to a voluntary act of the plaintiff."); *see also* 32A Am. Jur. 2d Federal Courts §
1482 (Feb. 2016).  The exception does not apply in this case because the Deputy
Liquidator has, thus far, taken no affirmative action to drop the nondiverse Defendants
from the action.  Quite the contrary, the Deputy Liquidator argues that the nondiverse

parties are properly joined and are essential to the liquidation proceedings. [*See* R. 20-1 at 5.]

CGI asserts that the nondiverse Defendants were fraudulently joined and that the citizenship of the fraudulently joined Defendants should be ignored for purposes of determining diversity jurisdiction. [*See* R. 30 at 10.] Fraudulent joinder is a "judicially created doctrine that provides an exception to the requirement of complete diversity." *Coyne v. Am Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999) (quoting *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998)). This doctrine is used by courts "when the non-removing party joins a party against whom there is no colorable cause of action." *Saginaw Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009) (citing *Jerome-Duncan Inc. v. Auto-By-Tel, LLC*, 176 F.3d 904, 907 (6th Cir. 1999). This doctrine was created to prevent plaintiffs from asserting claims against nondiverse defendants "for the sole purpose of preventing removal." *McLeod v. Cities Serv. Gas Co.*, 233 F.2d 242, 246 (10th Cir. 1956). If the Plaintiff's claim has no hope of success, then the "fraudulent joinder of non-diverse defendants will not defeat removal on diversity grounds." *Saginaw Housing Com'n*, 579 F.3d at 624 (quoting *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)).

CGI Technologies and Solutions, the removing party, has the burden of proving fraudulent joinder and must present "sufficient evidence that a plaintiff could not have established a cause of action against [the] non-diverse defendants under state law." *Coyne, 183 F.3d at 493*. To resolve a claim of fraudulent joinder, the district court may "pierce the pleadings" to consider summary judgment-like evidence, but it should evaluate that evidence like it would a Rule 12(b)(6) motion to dismiss. *Walker v. Philip*

*Morris USA, Inc.*, 43 Fed.Appx. 946, 954 (6th Cir. 2011).  Any contested issues of fact should be construed in the non-removing party's favor.  *Id.*

A fellow district court in the Eastern District of Kentucky has noted that, "[d]espite this ancient maxim that courts may not act without jurisdiction, the fraudulent-joinder inquiry requires them to do just that."  *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 970 F. Supp. 2d 590, 595 (E.D. Ky. 2011).  This Court agrees that it "runs contrary to bedrock principles" to allow a federal court to exercise "a little bit of jurisdiction —enough for a quick peek at the merits of a claim, but no more."  *Id.*  Even more intriguing is that this judicial doctrine "requires courts to examine the merits of claims over which *everyone agrees* the court lacks jurisdiction."[1]  *Id.*

In *Murriel-Don Coal Co., Inc. v. Aspen Ins.UK Ltd.*, 970 F. Supp 2d 590 (E.D. Ky. 2011) the court performed a fraudulent-joinder analysis to determine whether two nondiverse defendants should be "cut loose" so that the action could remain in federal court.  *Id.* at 592.  Instead of requiring federal courts to use a "fractured, judicially created doctrine" to maintain jurisdiction over nondiverse defendants, it would, in many circumstances, be more appropriate to allow state courts to decide questions of state law and determine whether the claims are frivolous.  *See id.* at 596-597 (referencing *Tafflin v. Levitt*, 493 U.S. 455, 465, 110 S.Ct. 792, which notes that "state courts presumably have greater expertise" at adjudicating "violations of state law.")

---

[1] *See* [R. 30 at 10] Defendant CGI "readily admits that, on its face, the Copycat Action does not satisfy the complete diversity requirement of 28 U.S.C. § 1332."  Generally, district courts are instructed to order remand in situations where removal is improper and Defendants fail to establish subject matter jurisdiction; S*ee also Gafford v. Gen. Elec. Co.*, 997 F.2d 150, 158 (6th Cir. 1993) (stating that the removing defendant bears the burden of showing that removal was proper).

This Court was particularly persuaded by dicta from *Murriel* that suggest a more efficient method for handling nondiverse defendants in the fraudulent joinder context. Judge Thapar stated, "[t]he better course is for the court to remand the case and allow the state court to dismiss the claims against the non-diverse defendants if those claims truly present no hope of success. Once the state court dismisses the non-diverse defendants from the case, the remaining diverse defendants" could then remove the action to federal court. *Murriel-Don Coal Co., Inc. v. Aspen Ins.UK Ltd.*, 970 F. Supp 2d 590, 597 (E.D. Ky. 2011). The *Murriel-Don Coal Co.* decision was issued May 20, 2011, but amendments to the removal statute, 28 U.S.C. § 1446(b), and the statute concerning diversity of citizenship, 28 U.S.C. § 1332, were enacted and made effective December 7, 2011.

When a state court action is filed and the defendants are citizens of different states, the removal mechanism under the more recent statute operates just as before. *See* 28 U.S.C. § 1446(b) (allowing for the defendant to file a notice of removal "within 30 days" once the state court case has become removable.) The most significant change between the recently enacted version of 28 U.S.C. § 1446 and its predecessor relates to additional clarifications that are not at issue in this case but that specifically address removal with multiple defendants and when the 30 day time limit on removal begins. *See* 28 U.S.C. § 1446 (b)(2). Importantly, Judge Thapar considered the possible hurdle for successive removal in *Murriel-Don Coal Co.*, because both versions of the statute include a one-year rule that prevents removal of cases when subject matter jurisdiction is conferred solely by complete diversity of citizenship as defined by 28 U.S.C. § 1332 and

the action was filed more than one year ago.[2]  *See* 28 U.S.C. § 1446(c); *see also Brierly*

*v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999).  The Sixth

Circuit Court of Appeals directly addressed this issue in *Brierly v. Alusuisse Flexible*

*Packaging, Inc.*, where a state court case was removed to the Eastern District of

Kentucky, remanded to state court, then removed to federal court a second time but after

the one year time period had elapsed.  *Id.* at 529-531.  *Brierly* held that "the one year-

termination on removal of diversity cases applies only to those that were not initially

removable" and found that the district court properly considered and denied the second

motion for remand.  *Id.* at 535.

The instant action is one of many interrelated removed and petition actions that

are currently before the court.[3]  While each motion in these cases is considered

independently and in light of its own factual and procedural posture, it seems prudent to

note that, "at the heart of fraudulent joinder is an understandable impulse: Plaintiffs

should not be able to play games with federal jurisdiction."  *Murriel-Don Coal Co.*, 790

F. Supp. 2d at 596.  But, "[i]t is well established that the plaintiff is master of [his]

complaint and can plead to avoid federal jurisdiction."  *Smith v. Nationwide Property and*

*Cas. Ins. Co.*, 505 F.3d 401 (6th Cir. 2007) (quoting *Lowdermilk v. U.S. Bank National*

*Ass'n*, 479 F.3d 994, 998-99 (9th Cir. 2007)).  In light of these independently valid but

---

[2] A limitation of one year for removal of diverse actions was created in 28 U.S.C. §1446 through the 1988 Judicial Improvements and Access to Justice Act, Pub. L. No. 100-702, §1016(b)(2)(B), 102 Stat. 4642, 4669 (1988).  Legislative history indicates that the one-year limit was implemented for judicial efficiency and "as a means of reducing the opportunity for removal after substantial progress has been made in state court.  H.R. REP. 100-889, 72, 1988 U.S.C.C.A.N. 5982, 6032.

[3] The Liquidator and Deputy Liquidator have filed at least two state court actions that have been removed to this court. The initial removed and petition actions have been consolidated into *H. Brian Maynard, Liquidator of Kentucky Health Cooperative, Inc., v. CGI Technologies and Solutions, Inc.*, Case No. 3:16-cv-00037-GFVT.  The instant action is also paired with a petition action that was filed by Beam Partners, LLC and Terry S. Shilling in the case *Beam Partners,* et al., *v. H. Brian Maynard, Liquidator of Kentucky Health Cooperative, Inc.*, Case No. 3:17-cv-00004-GFVT.

dueling principles, the Defendant is urging the Court to adjudicate a case that facially

lacks jurisdiction.  "Without jurisdiction the court cannot proceed at all in any cause.

Jurisdiction is power to declare the law, and when it ceases to exist, the only function

remaining to the court is that of announcing the fact and dismissing the cause."  *Steel Co.*

*v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (quoting *Ex parte McCardle*,

7 Wall. 506, 514 (1868)).

    With this legal framework in mind, the Plaintiff's claims against each non-diverse

defendant must be evaluated to determine whether the parties were fraudulently joined.[4]

The parties are not fraudulently joined if "there is arguably a reasonable basis for

predicting that state law might impose liability on the facts involved." *Alexander v. Elec*

*Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994).  Other Circuits have described claims

as having a "reasonable basis" if they display as little as a "glimmer of hope."  *Hartley v.*

*CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999).[5]

### C

    Ms. Janie Miller, the Officers and Board of Directors of the Kentucky Health

Cooperative, Inc., and Joseph E. Smith are the non-diverse Defendants.  Turning to each

of these Defendants, at least one is not fraudulently joined.

### 1

    28 U.S.C. § 1441(b)(1) states "[i]n determining whether a civil action is

removable on the basis of the jurisdiction under section 1332(a) of this title, the

---

[4] *See Salisbury v. Purdue Pharma, L.P.*, 166 F. Supp. 2d 546, 549 (E.D. Ky. 2001) ("Ordinarily, the question of fraudulent joinder would require that the Court inspect each of plaintiffs' theories of relief, determining under each count whether plaintiffs state a colorable cause of action under state law.")

[5] *See also Tedder v. F.M.C. Corp.*, 590 F.2d 115, 116 (5th Cir. 1979) ("If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent and lack of diversity will not prevent removal.")

citizenship of defendants sued under fictitious names shall be disregarded." The Sixth

Circuit has strictly complied with the text of this statute. In *Alexander v. Elec. Data Sys.*

*Corp*., 13 F.3d 940 (6th Cir. 1994), the Court of Appeals held that, "It is clear that 'Jane

Doe' is a fictitious name; no such real person was ever named and plaintiff never

identified the alleged person…," therefore, "[s]ection 1441(a) **compels** that the 'named'

defendant be disregarded for purposes of diversity jurisdiction." [6] *Id.* at 948 (emphasis

added). Similarly, in this action, the Plaintiff has not identified any named Defendants,

other than Ms. Miller and Mr. Smith, that comprise the generally named "KYHC Officers

and Directors."

Strict interpretation of statutory provisions concerning removal, including 28

U.S.C. § 1441, is evidenced by Congressional intent, legislation, and Supreme Court

precedent. *See Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-09 (1941); *see*

*also Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527, 534 (6th Cir. 1999)

(citing *Shamrock*, 313 U.S. at 108-09). In *Smith v. Kmart Corp.*, No. 7:12-CV-103-KKC,

2012 WL 6652602 (E.D. Ky. Dec. 19, 2012), the court stated that, "The Sixth Circuit has

… strictly interpted[ed] the language of this statute and disregard[ed] fictitious

defendants' citizenships without reference to any other factors." *Smith v. Kmart Corp*, at

*1 (citing *Curry v. U.S. Bulk Transp., Inc.*, 462 F.3d 536, 539 (6th Cir. 2006); *Alexander*

*v. Elec. Data Sys. Corp.*, 13 F.3d 940, 948 (6th Cir. 1994)). The Liquidator concedes that

he pled deficient claims against the unnamed Board of Directors by admitting, "[t]he

Liquidator's claims against the Board … can easily be cured by an amendment asserting

---

[6] When *Alexander v. Elec. Data Sys. Corp.* was decided in 1994, 28 U.S.C. § 1441(a) stated, "For purposes of removal under this chapter, the citizenship of defendants sued under fictitious names shall be disregarded." This language is different than, but functionally identical to, the updated statute and language found in 28 U.S.C. § 1441(b)(1).

the claims against the individual board members."  [R. 20-1 at n.3.]  As of this date, no

amendments to the complaint have been made.  Therefore, 28 U.S.C. § 1441(a) mandates

that the "KYHC Officers and Directors" shall be disregarded for purposes of diversity

jurisdiction.

2

As to Ms. Miller, count four of the complaint alleges that she was negligent while

serving as Chief Executive Officer of the KYHC.  [R. 1-2 at ¶¶ 35 -41.]  KRS 273.229

requires "officers of a non-profit corporation" to "act with the same care as an ordinary

prudent person in a like position in similar circumstances when tending to the

corporation's affairs."  [*Id.* at ¶ 37.]  Ms. Miller allegedly failed to exercise ordinary care

by implementing and failing to correct "inadequate insurance premium rates" that were a

"substantial factor in causing KYHC's insolvency."  Count six suggests that Ms. Miller

breached the fiduciary duty she owed to the KYHC in multiple respects [*see* R. 1-2 at ¶¶

47-51] and count seven of the complaint alleges gross negligence against Ms. Miller as

she "willfully and recklessly ignored the obvious and foreseeable danger of setting

inadequately low insurance premiums, and continued the willful and reckless conduct

after it became known that the insurance premiums would result in KYHC's insolvency."

[*Id.* at ¶ 56.]

Under Kentucky law, gross negligence is "something more than the failure to

exercise slight care*." City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001)

(quoting *Cooper v. Barth, Ky.*, 464 S.W.2d 233, 234  (Ky. 1971)).  In fact, "there must be

an element either of malice or willfulness."  *Id.*  More recently, the Kentucky Supreme

Court has defined "gross negligence," in the context of punitive damages, as requiring a

"finding of failure to exercise reasonable care, and then an additional finding that this negligence was accompanied by wanton or reckless disregard for the lives, safety or property of others." *City of Middlesboro*, 63 S.W.3d at 181 (citing *Horton v. Union Light, Heat & Power Co.*, 690 S.W.2d 382, 389-90 (Ky. 1985)).

The Kentucky Revised Statutes do not allow for monetary damages or injunctive relief against officers (or directors) of nonprofit corporations unless the officer has both (a) "…breached or failed to perform his duties in compliance with this section; and (b) [i]n the case of an action for monetary damages, the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for human rights, safety or property." Ky. Rev. Stat. Ann. § 273.229(5).[7] This statutory language is almost certainly a derivative of the same standard for gross negligence as described by the Kentucky Supreme Court. *See City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001).

Defendants argue that the claims found in counts four, six, eight, and ten of the complaint are barred by Kentucky law because the complaint fails to "allege that either [of] the Non-Diverse Defendants acted with the requisite willful or wanton intent or reckless disregard for human rights, safety, or property." [R. 30 at 12 (referencing Ky. Rev. Stat. Ann. §§ 273.229(5)(b), 273.215(5)(b); *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, Inc.,* 436 S.W.3d 189, 194-97 (Ky. 2013)).] Count four alleges that Ms. Miller "failed to exercise ordinary care" and that her "negligence was a substantial factor in causing KYHC's insolvency." [R. 1-2 at ¶¶ 38, 40.] Count six alleges that Ms. Miller "failed to exercise reasonable diligence, due care, and skill" and

---

[7] Ky. Rev. Stat Ann § 273.215(5) provides the same protections from recovery for Directors of nonprofit corporations.

14

that the harm to KYHC was a "direct and proximate result of her breach of fiduciary duties." [*Id.* at ¶¶ 50-51.]

The Kentucky Revised Statutes require gross negligence for liability to be imposed against an Officer or Director of a nonprofit corporation but the Complaint [*see* R. 1-2] merely alleges negligence, instead of gross negligence. Therefore, counts four and six fail to allege sufficient facts that support a claim for recovery. There is not a "reasonable basis for predicting that state law might impose liability on the facts involved" as to these counts. *See Alexander v. Elec Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Gross negligence is "something more than the failure to exercise slight care," and all that has been alleged in the Complaint is a violation of "ordinary care" or general negligence. The complaint's allegations do not suggest willful misconduct or wanton or reckless behavior that rises to a level of impropriety such that liability for monetary damages could be imposed upon the defendants.[8] *See City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001) (quoting *Cooper v. Barth, Ky.*, 464 S.W.2d 233, 234 (Ky. 1971); *see also* Ky. Rev. Stat. Ann §§ 273.229(5), 273.215(5).

Count five of the complaint suggests that Ms. Miller was unjustly enriched when she accepted a bonus of $50,000 from the KYHC "without providing services for its value." [R. 1-2 at ¶¶ 42-46.] The legal claim of unjust enrichment was created "as a basis of restitution to prevent one person from keeping money or benefits belonging to another." *Rose v. Ackerson*, 374 S.W.3d 339, 343 (Ky. App. 2012) (quoting *Haeberle v. St. Paul Fire and Marine Ins. Co.*, 769 S.W.2d 64, 67 (Ky. App. 1989)). Kentucky

---

[8] In the Response to the Liquidator's Motion to Remand, CGI states that "[t]he Liquidator does not contest that the ordinary negligence and negligence-based breach of fiduciary claims against the Non-Diverse Defendants (Counts 4, 6, 8, and 10) are foreclosed by Kentucky's codification of the business-judgment rule and limitations of liability for nonprofit directors and officers." [R. 30 at 12.]

Courts have created a three element test to establish a claim for unjust enrichment. The complaint must allege that there is a: "(1) benefit conferred upon defendant at plaintiff's expense, (2) a resulting appreciation of benefit by defendant; and (3) inequitable retention of benefit without payment for its value." *Collins v. Kentucky Lottery Corp.*, 399 S.W.3d 449, 455 (Ky. Ct. App. 2012).

But, a traditional analysis of unjust enrichment is not necessary in the instant action because there is a written agreement between the parties. Ms. Miller's employment agreement with the KYHC specifically provided for her bonus as part of her total compensation package and establishes an annual review process for determining the bonus amount. [*See* R. 31-2 at 2, 7.] Both the Sixth Circuit Court of Appeals and the Kentucky Court of Appeals have held that, "[t]he doctrine of unjust enrichment has no application in a situation where there is an explicit contract which has been performed." *Shane v. Bunzl Distribution USA, Inc.*, 200 F. App'x 397, 404 (6th Cir. 2006) (quoting *Codell Constr. Co. v. Kentucky*, 566 S.W.2d 161, 165 (Ky. Ct. App. 1997); *see also Kay & Kay Contracting, LLC v. Vanhook Enterprises, Inc.*, 2016 WL 6819738, at *6 (Ky. Ct. App. Nov. 18, 2016). The appropriate remedy in a contract-based employment disagreement would likely be through a breach of contract claim, not unjust enrichment. Since there is an explicit employment agreement that addresses bonus compensation [R. 31-2], and the parties do not contest the validity of the contract, the claim for unjust enrichment against Ms. Miller fails. Therefore, Count 5 does not raise a colorable cause of action that might impose liability under state law on the facts involved. *See* Saginaw *Housing Comm'n v. Bannum, Inc.*, 576 F.3d 620, 624 (6th Cir. 2009).

As to Ms. Miller, only count seven which allege gross negligence, remains. Count seven alleges that Janie Miller, the CEO of KYHC, "willfully and recklessly ignored the obvious and foreseeable danger of setting inadequately low insurance premiums, and continued the willful and reckless conduct after it became known that the insurance premiums would result in KYHC's insolvency." [R. 1-2 at ¶ 56.] The complaint alleges that Ms. Miller behaved "willfully and recklessly," committed "gross negligence," and that her gross negligence damaged the KYHC. [*See id.* at ¶¶ 52-59.]

Two statutes, Ky. Rev. Stat. Ann. § 273.229(5) and § 273.215(5), establish the standards of conduct for officers and directors of nonprofit corporations and allow for officers and directors to be found liable for monetary damages in a limited number of circumstances. Generally, officers of nonprofit corporations will not be liable for their actions or for failing to act. *See* Ky. Rev. Stat. Ann. § 273.229 (5). There is an exception, however, that allows for an officer to be found liable for monetary damages when the officer breaches her duties and "the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for human rights, safety or property." *Id.*; *cf.* Ky. Rev. Stat. Ann. § 271B.8-420 (standards of conduct for officers of for-profit corporations allow for monetary damages when the officer fails to perform her duties and "the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for the best interests of the corporation or its shareholders.")

To be awarded monetary damages from the nonprofit corporate officer the Plaintiff also has "the burden of proving that the breach or failure to perform was the legal cause of the damages suffered." Ky. Rev. Stat. Ann. § 273.229 (6). For a monetary damage claim to survive against the officer of a nonprofit corporation, the claimant must

allege wrongdoing greater than that needed to succeed against for-profit corporate officers.  Generally, these protective laws were passed to "encourage[e] individuals to serve as directors of charitable corporations by shielding them from liability for service in that capacity."  [R. 30 at 15, quoting Revised Model Nonprofit Corporations Act § 2.02, Official Comment, at 2-10 (Am. Bar Ass'n, 3d ed. 2009).]  But, at this stage of litigation the plaintiff does not have to prove that the claim will be successful; rather, it is the removing party that has the burden of establishing fraudulent joinder.  *See Coyne v. Am Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).  In fact, the Defendant's burden is very high because, "[a]ll doubts as to the propriety of removal are resolved in favor of remand."  *Id.*

The charges against Ms. Miller are supported by minimal factual allegations.  [*See* R. 1-2 at ¶¶ 52-59.]  The complaint is not detailed and states little more than a reference to statutes that impose liability on Officers of nonprofit corporations and presents allegations that Ms. Miller has behaved willfully and recklessly.  *Id.*  But, even the Federal Rules of Civil Procedure only require a "short and plain statement . . . showing the pleader is entitled to relief."  Fed. Rules Civ. Proc. 8(a)(2).  District courts are permitted to "pierce the pleadings" in a fraudulent joinder analysis.  *Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 954 (6th Cir. 2011).  Although, if courts pierce the pleadings "to consider summary-judgment-type evidence (such as depositions, affidavits, etc.), the proper standard for evaluating that evidence remains akin to that of a Rule 12(b)(6) motion to dismiss, and is arguably even more deferential."  *Id.*  Also, "any contested issues of fact must be construed in the plaintiff's favor."  *Id.*

At oral argument Defendants introduced a United States Court of Federal Claims opinion, *Health Republic Ins. Co. v. United States*, 129 Fed. Cl. 757, 761 (2017), as evidence that federal premium stabilization programs were implemented following enactment of the Patient Protection and Affordable Care Act.  Defendants suggested that Ms. Miller relied on these promised federal reimbursements and acted reasonably when she priced KYHC premium rates at unsustainable levels.  *See id;* [R. 42 at 84-86.]  In opposition, the Liquidator attached a letter from CGI Technologies and Solutions concerning the Kentucky Health Cooperative.  [*See* R. 20 at 20-3, 20-4, 20-5.]  Darla Bassetti, the VP of Consulting Services for CGI, sent the letter dated September 29, 2015, to Mr. Glenn Jennings, the Interim CEO for the Kentucky Health Cooperative, Inc.  [R. 20-4.]  In this letter CGI "rejects having sole financial responsibility" for damages arising out of the corporation's relationship with KYHC and that "CGI believes this is a joint responsibility with KYHC and its third party vendors, including carve-out vendors."  [R. 20-4 at 3-4.]  Finally, when discussing the KYHC's financial outlook Mr. Jennings stated that "[i]ncorrect pricing of premiums to cover cost or reduce the loss impact has impacted the KYHC current financial situation."  [R. 20-4 at 4.]

Ky. Rev. Stat. § 273.229 allows for officers to be held liable for "any action taken as an officer, or any failure to take any action as an officer…"  By stating that Miller "willfully and recklessly ignored the obvious and foreseeable danger" the complaint is alleging that Miller failed to take action when the KYHC was faced with significant economic challenges arising from improperly priced insurance premiums.  For monetary damages to be awarded, Miller's behavior must have "constitute[d] willful misconduct or wanton or reckless disregard for human rights, safety or property."  *Id.*

For all of the reasons mentioned above, by alleging willful, reckless, and grossly negligent behavior against Ms. Miller as CEO of KYHC, the plaintiffs have pled a claim for relief that arguably creates "a reasonable basis for predicting that state law might impose liability on the facts involved." *Alexander v. Elec Data Sys. Corp.*, 13 F.3d 940, 949 (6th Cir. 1994). Since Plaintiff's claim under count seven of the complaint has the slightest "glimmer of hope" that suggests recovery is possible under state law, Defendant Miller has not been fraudulently joined. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 426 (4th Cir. 1999). Accordingly, removal on the grounds of diversity jurisdiction must be defeated by the non-diverse defendant unless an alternative method of providing subject matter jurisdiction is available. *See Saginaw Housing Com'n*, 579 F.3d at 624 (referencing *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999)).

CGI was unable to present "sufficient evidence that [the] plaintiff could not have established a cause of action against [the] non-diverse defendants under state law." *Coyne, 183 F.3d at 493.* The court pierced the pleadings to reach this conclusion but is poorly situated at this stage of the proceedings to thoroughly evaluate the merits of the state law claim before discovery has been conducted. *See Walker v. Philip Morris USA, Inc.*, 43 Fed.Appx. 946, 954 (6th Cir. 2011). There is a "heavy burden that defendants have failed to carry." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 970 F. Supp. 2d 590, 595 (E.D. Ky. 2011). Also relevant is the ever present obligation for a court of limited jurisdiction to resolve any doubts regarding federal jurisdiction in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted).

20

**3**

Similar actions for negligence are brought against Joseph E. Smith, a Kentucky resident that served as Chairman of the Board of Directors of the KYHC. [R. 1-2 at ¶ 13.] Count eight charges the Board of Directors and Joseph Smith individually with negligence. [*Id.* at ¶¶ 60-69.] The complaint states that Mr. Smith failed to exercise ordinary care" and that his negligence "was a substantial factor in causing KYHC's insolvency." [R. 1-2 at ¶¶ 64-69.] These accusations suggest that he failed to correct the improper premium pricing or to act when CGI inadequately processed claims and that he improperly paid bonus to KYHC executives. [*See id.*] Count ten charges the Board and Joseph Smith with a breach of their fiduciary duties and due care by stating substantially similar allegations to count eight. [*Id.* at ¶ 77-82.] The allegations suggest that Mr. Smith "fail[ed] to exercise reasonable diligence, due care, and skill in managing KYHC's business." [*Id.* at ¶ 81.]

The Kentucky Revised Statutes also protect Directors of nonprofit corporations from monetary or injunctive relief unless the director engages in "willful misconduct or wanton or reckless disregard for human rights, safety or property." Ky. Rev. Stat. Ann § 273.215(5). The Kentucky Revised Statutes require gross negligence for liability to be imposed against a director of a nonprofit corporation but the Complaint [*see* R. 1-2] merely alleges negligence in counts eight and ten, instead of gross negligence. Therefore, counts eight and ten as to Mr. Smith fail to allege sufficient facts that support a claim for recovery.

There is not a "reasonable basis for predicting that state law might impose liability on the facts involved" as to these counts. *See Alexander v. Elec Data Sys. Corp.*,

13 F.3d 940, 949 (6th Cir. 1994). As mentioned above, gross negligence is "something more than the failure to exercise slight care," and all that has been alleged in the Complaint is a violation of "ordinary care" or general negligence. The complaint's allegations do not suggest willful misconduct or wanton or reckless behavior that rises to a level of impropriety such that liability for monetary damages could be imposed upon the defendants. *See City of Middlesboro v. Brown*, 63 S.W.3d 179, 181 (Ky. 2001) (quoting *Cooper v. Barth, Ky.*, 464 S.W.2d 233, 234 (Ky. 1971); *see also* Ky. Rev. Stat. Ann §§ 273.229(5), 273.215(5).

In count nine, the Plaintiff alleges that the Officers and Directors of KYHC and Joseph E. Smith were grossly negligent. [R. 1-2 at ¶¶ 70-76.] The complaint states that Defendants "willfully and recklessly ignored the obvious and foreseeable danger of setting woefully inadequate insurance premiums, and continued their willful and reckless conduct after it became known that the insurance premiums would result in KYHC's insolvency." [R. 1-2 at ¶ 73.] These allegations conclude by stating that Joseph Smith's gross negligence "was a substantial factor in causing KYHC's insolvency. [*Id.* at ¶ 75.] KRS. §§ 273.229(5), 273.215(5), declare that officers and directors of nonprofit corporations can be found liable for monetary damages when "the breach or failure to perform constitutes willful misconduct or wanton or reckless disregard for human rights, safety or property." Ky. Rev. Stat. Ann. § 273.215(5) (b). Even so, nonprofit corporations are allowed to insert provisions into the articles of incorporation that eliminate or limit personal liability for directors. Liability for monetary damages can be eliminated in almost all instances except those where the directors are financially

interested in the transaction or where the director's acts are "not in good faith or which involve intentional misconduct…"  Ky. Rev. Stat. Ann. § 273.248.

The Kentucky Health Cooperative's Articles of Incorporation [R. 31-1] have a provision under "6. Board of Directors" that discusses director liability.  [R. 31-1 at 3.] Provision 6.2 of the Articles of Incorporation specifically states:

> Pursuant to Kentucky Revised Statutes §273.248, the Board of Directors shall have no personal liability to the Corporation for monetary damages for breach of their duties as a Director.  Pursuant to Kentucky Revised Statutes §273.248, this Paragraph 6.2 shall not eliminate the liability of a Director for any transaction in which the Director's personal financial interest is in conflict with the financial interest of the Corporation; for acts or omissions not in good faith or which involve intentional misconduct or are known to the Director to be a violation of the law; or for any transaction from which the Director derived an improper personal benefit.

[R. 31-1 at 3.]  This provision virtually eliminates liability for directors unless the claimant charges the director with bad faith, intentional misconduct, knowingly violating the law, or engaging in an interested transaction.  While this claim may have a glimmer of hope, further analysis is not necessary.  Since count seven presents an arguably reasonable basis "for predicting that state law might impose liability on the facts involved," the plaintiff's claim against defendant Miller is not fraudulently joined and therefore, her citizenship defeats diversity and all claims must be remanded to state court unless the claims are severed.

## D

In the alternative to fraudulent joinder, CGI argues that the claims against nondiverse defendants have been fraudulently misjoined and that these remaining claims against Miller and Smith should be independently remanded.  [*See* R. 30 at 20.] Fraudulent misjoinder "arguably occurs when a plaintiff joins a valid, but unrelated,

23

claim against a non-diverse defendant in order to defeat diversity." *Murriel-Don Coal Co., Inc. v. Aspen Ins. UK Ltd.*, 970 F. Supp. 2d 590, 599 (E.D. Ky. 2011). While fraudulent joinder has clearly been adopted by the Sixth Circuit, fraudulent misjoinder has not been endorsed by the Court of Appeals and many courts in the Eastern District of Kentucky have refused to apply this new doctrine. *See Kent State Univ. Bd. of Trustees v. Lexington Ins. Co.*, 512 F. App'x 485, 491 n.1 (6th Cir. 2013); *see also* [R. 30 at 21 ("[t]he Liquidator notes that the Sixth Circuit has not adopted or rejected the doctrine of fraudulent misjoinder and that there are conflicting decisions in this district with regard to its applicability."); *see e.g. Freitas v. McKesson Corp.*, 889 F. Supp. 2d 931 (E.D. Ky. 2012); *Estate of Rogers v. E.I. Dupont du Nemours and Co.*, 2013 U.S. Dist. Lexis 189836 (E.D. Ky. 2013).] This court reaches the same conclusion as the majority of courts in the Eastern District of Kentucky by deciding that application of fraudulent misjoinder should be left to the state courts. *See Murriel-Don Coal Co., Inc. v. Aspen Ins.UK Ltd.*, 970 F. Supp 2d at 597 ("In light of the questionable basis of the Court's authority to conduct fraudulent-misjoinder analysis and numerous unsettled doctrinal questions, the Court agrees with the other district courts that have left the whole enterprise to state courts."); *Id.* at 600 (referencing *Osborn* 341 F. Supp. 2d at 1127; *Geffen*, 575 F. Supp. 2d at 871.

## E

Defendant CGI requests that the Court sever the claims pled by Deputy Liquidator Gaither against nondiverse Defendants Janie Miller, Joseph Smith, and KYHC's Officers and Directors under Rule 21 of the Federal Rules of Civil Procedure. [*See* R. 5 at 5.] Federal Rule of Civil Procedure 21 permits severance of claims against parties who have

24

been improperly joined.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 832, (1989) (holding that "it is well settled that Rule 21 invests district courts with authority to allow a dispensable nondiverse party to be dropped at any time.")  Rule 21 provides that "[m]isjoinder of parties is not a ground for dismissing an action. On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against any party."  Fed. R. Civ. P. 21.

While the court may sever the claims against any party, "the authority to dismiss a dispensable nondiverse party. . . should be exercised sparingly."  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 937 (1989).  "The manner in which a trial court handles misjoinder lies within that court's sound discretion."  *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 682 (6th Cir. 1988).  "Rule 21 gives the court discretion to make three types of orders.  The court may add parties, drop (dismiss) parties, and may sever '[a]ny claim against a party.'"  4-21 *Moore's Federal Practice-Civil* § 21.02 (internal quotation omitted).  "Severance under Rule 21 results in separate actions."  *Id.* at § 21.06.  "As with any case in federal court, [the severed action] may be transferred under appropriate circumstances . . . .  Indeed, the fact that a claim might be subject to transfer to a more appropriate venue is a valid reason to order severance."  *Id.*

CGI argues that Miller, Smith, and the Officers and Directors of KYHC are neither necessary to the action nor are they indispensable.  [R. 5-1 at 11.]  CGI believes that the initial lawsuit by the Liquidator, which was file solely against CGI, suggests that additional parties were not actually necessary.  *Id.*  CGI further states that the claims against the nondiverse parties as well as Beam and Shilling are highly attenuated and that this "limited factual overlap" is inadequate to classify the other defendants as indispensable.  [R. 5-1 at

25

12.]  The Liquidator argues that these parties are essential and that the claims brought against them were intended for the original action styled *Maynard v. CGI Technologies and Solutions Inc.*, but that CGI removed the action before the complaint could be amended to include the nondiverse parties.  [R. 21 at 2.]

As the KYHC neared insolvency, KYHC sent a letter to CGI on August 1, 2015, to notify CGI of its inadequate performance and to provide estimates of damages due to CGI's allegedly deficient actions as the third-party administrator.  [*See* R. 21 at 2.]  CGI responded with a letter dated September 29, 2015, that denied "sol[e] responsibility" and attributed partial responsibility to "third parties," "third party vendors including carve out vendors," and "third party venders."  [R. 21 at 3 referencing 21-1, 21-3.]  The Liquidator argues that, if severed, there will be a "substantial risk of [another party] incurring . . . inconsistent obligations" if state and federal court juries allocate fault in an inconsistent manner.  [*See* R. 21 at 5.]  The Deputy Liquidator believes that, if the court were to sever the action, that would functionally result in a remand to state court because, application of the Fed. R. Civ. Pro 19(b) factors would mandate dismissal so that all parties could be rejoined in state court.  [*Id.*]  Finally, the Deputy Liquidator asks the Court not to sever the claims because defendants were properly joined and severance would cause prejudice to the Plaintiff.  [R. 21 at 9.]

Fed. R. Civ. P. 20 states that Defendants may be joined in one action if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in the action."  *Id.*  In this case, the allegations in the Complaint against diverse and nondiverse Defendants arise

out of the same transaction, occurrence, or series of transactions or occurrences that led to the insolvency of the KYHC.[9]  Fed. R. Civ. P. 82 provides an admonition to federal courts that the rules of civil procedure are not supposed to "extend or limit the jurisdiction of the district courts."  *Id.*; *Palkow v. CSX Transp., Inc.*, 431 F.3d 543, 555 (6th Cir. 2005).  The Sixth Circuit has clarified that, "[a]lthough we agree that a party may not create diversity by dropping a nondiverse and indispensable party, we hold that it is appropriate to drop a nondiverse and dispensable party from litigation in order to achieve diversity."  *Soberay Mach. & Equip. Co. v. MRF*. Ltd., Inc., I81 F.3d 759, 763 (6th Cir.1999).

Rule 19 of the Federal Rules of Civil Procedure establishes a two-step process that guides the Court's determination of whether a party is indispensable.  First, the Court must determine whether a party is necessary.  A party is necessary if: "(1) complete relief cannot be given to existing parties in his absence; (2) disposition in his absence may impair his ability to protect his interest in the controversy; or (3) his absence would expose existing parties to substantial risk of double or inconsistent obligations."  *Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 546 (6th Cir. 1994); Fed. R. Civ. P. 19(a).  If the Defendant is found to be a necessary party, then Rule 19(b) directs the Court to determine whether the party is indispensable.  This requires the Court to consider whether: "(1) a judgment rendered in the party's absence would prejudice the available party; (2) such prejudice could be lessened or avoided; (3) a judgment rendered in the party's absence would be adequate; and (4) the plaintiff has an adequate remedy if the action is dismissed for nonjoinder."  *Joseph v. Baxter Int'l Inc.,* 614 F. Supp. 2d 868, 872 (citing *Soberay*

---

[9] While insolvency of the KYHC was the eventual result of the CGI, Beam, Miller, and Smith contractual relationship, the Deputy Liquidator believes that the claims are intimately related as they "arise in part from CGI's failure to adequately process claims" which was "something that the Non-Diverse Defendants failed to supervise properly."  [R. 21 at 9.]

*Mach. & Equip. Co. v. MRF. Ltd., Inc.*, I81 F.3d 759, 764 (6th Cir.1999)); Fed. R. Civ. P. 19(b).

Deputy Liquidator Gaither is concerned with dismissal of the nondiverse parties and argues that the nondiverse defendants are necessary because their absence would create "a substantial risk of [another party] incurring . . . inconsistent obligations." [R. 21 at 5 quoting *Johnson v. Bartley*, 2015 U.S. Dist. LEXIS 12670 at *2-3 (E.D. Ky. Sept. 21, 2015.)] If the Court does not find the parties to be necessary, the Deputy Liquidator nonetheless argues that the nondiverse parties are indispensable. Gaither believes that Defendant CGI will blame nondiverse Defendants for fault and escape liability if Miller, Smith, and the Officers and Directors are severed. Further, Gaither believes that this prejudice cannot be lessened and that the only adequate remedy is for this Court to remand the action or dismiss it entirely without prejudice. [R. 21 at 6.]

The Plaintiff cites to a number of persuasive authorities that deny severance motions "when the removing party cannot demonstrate fraudulent joinder or misjoinder." [R. 21 at 7, n.2.] Despite instruction from the Sixth Circuit that severance can appropriately establish diversity jurisdiction in certain circumstances, *see Soberay Mach. & Equip Co. v. MRF. Ltd., Inc.*, 181 F.3d 759, 763 (6th Cir.1999), many district courts have found that severing claims of nondiverse parties in removed actions would violate Rule 82 and should not be done in the absence of misjoinder. [*See* R 21 at 7, n.2; *see also Jamison v. Purdue Pharma Co.*, 251 F. Supp. 2d 1315, 1321 n.6 (S.D. Miss 2003) (finding that "[A] district court may run afoul of Rule 82 when it uses a federal rule to sever claims in a removed case…"); *Etheridge v. Liberty Mutual Ins.*, 2008 U.S. Dist. LEXIS 67244 at *9 (N.D. Miss., August 26, 2008).]

This Court has already determined that count seven of the complaint against Ms. Miller, the CEO of KYHC, is not fraudulently joined or misjoined. Since the claim has been validly pled against a nondiverse defendant, she must be severed or the action as a whole fails to satisfy the requirements of diversity jurisdiction. But, Miller is a necessary Defendant and her severance would prejudice the parties. There is a substantial possibility of inconsistent verdicts if the nondiverse Defendant Miller is severed from this action. In the Complaint the Plaintiff demands "Judgment against Defendants jointly and severally for monetary damages." [R. 1-2 at 22; *but see* R. 27 at 4 n.5 (stating that the Liquidator acknowledged that Kentucky law requires joint tortfeasors to face several liability, not joint-and-several-liability, but that this distinction "makes no difference for purposes of determining whether Miller and Smith are indispensable or necessary parties.] Were Miller and the remaining nondiverse parties to be severed, it is entirely possible that different juries in State and Federal court will find the multiple Defendants responsible for "more or less liability than they deserve." *Johnson v. Bartley*, No. 15-56-ART, 2015 U.S. Dist. LEXIS 126706, at *7 (E.D. Ky. Sep. 21, 2015); *see also Safeco Ins. Co. of Am. v. City of White House, Tenn.*, 36 F.3d 540, 546 (6th Cir. 1994); Fed. R. Civ. P. 19(a).

Miller is also an indispensable party. If this action is dismissed for nonjoinder, the Plaintiff will have an adequate remedy as he will be able to continue with the action in State Court as intended. The Deputy Liquidator presents valid concerns that, in absence of the nondiverse Defendants, it is likely that the diverse defendants will "push off liability to the Non-Diverse Defendants." [R. 21 at 6.] This prejudice cannot be lessened or avoided by any means other than requiring the litigation to proceed with all defendants. Finally, a judgment issued in the absence of the nondiverse defendants will likely be inadequate. *See*

*Joseph v. Baxter Int'l Inc.,* 614 F. Supp. 2d 868, 872 (citing *Soberay Mach. & Equip. Co. v. MRF. Ltd., Inc.*, I81 F.3d 759, 764 (6th Cir.1999)); Fed. R. Civ. P. 19(b). The decision to classify Miller as indispensable and deny the request to sever claims against nondiverse Defendants is made in light of the instruction that, "the authority to dismiss a dispensable nondiverse party. . . should be exercised sparingly." *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 937 (1989).

Occasionally, District Courts or Courts of Appeals will sever claims against nondiverse parties in an effort to promote judicial efficiency. *Id. at 832-833.* In the instant action the litigation has not proceeded beyond preliminary jurisdictional matters, therefore concerns of judicial efficiency and waste of resources are not implicated. Also relevant is the ever present obligation for a court of limited jurisdiction to resolve any doubts regarding federal jurisdiction in favor of remanding the case to state court. *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108-109 (1941); *Cole v. Great Atlantic & Pacific Tea Co.*, 728 F. Supp. 1305, 1307 (E.D. Ky. 1990) (citations omitted).

### III

Because this Court has found that the nondiverse Defendant Janie Miller was not fraudulently joined by Liquidator Gaither and the claims against Ms. Miller should not be severed, the action must be remanded as this Court lacks diversity jurisdiction. Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Defendant CGI's Motion to Sever [**R. 5**] is **DENIED**; and

2. Plaintiff Jeff Gaither's Motion to Remand [**R. 20**] is **GRANTED**.

This the 31st day of March, 2017.

Gregory F. Van Tatenhove
United States District Judge